# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DONALD N. DENNISON,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**Case No. 2:19-cv-4508**
**Judge Michael H. Watson**
**Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Plaintiff, Donald N. Dennison brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 5). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

On April 7, 2016, Plaintiff filed applications for both supplemental security income and disability insurance benefits, alleging that he had been disabled since March 14, 2016. (R. at 173-180; 181-192.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 46-67; 68-89.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at

115-129.)   Administrative Law Judge ("ALJ") Timothy G. Keller held a hearing on May 10, 2018, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 30-45.) On September 10, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-29.)  At the hearing, Plaintiff confirmed his intention to request a "closed period" of benefits from March 4, 2016 through March 20, 2017, a 54-week period.   (R. at 40.)  On August 20, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–6.) Plaintiff then timely commenced the instant action.

## II.  RELEVANT HEARING TESTIMONY

Plaintiff testified at the administrative hearing with respect to his speaking issues as follows:

> BY THE ADMINISTRATIVE LAW JUDGE:
>
> Q And sir, you tell me that you had speech therapy?
>
> A (No verbal response.)
>
> Q And when was the last time you had speech therapy?
>
> A Probably in -- sometime in the summer.
>
> Q In the summer, 2016?
>
> A Uh-huh.
>
> Q Is that correct?
>
> A I think so, I believe so.
>
> Q So you stopped radiation in July, and you had some speech therapy. And do you know how long it took, the speech therapy?
>
> A Oh, it was usually 45 minutes to an hour at a time. And swallowing therapies, they'd have me swallowing barium stuff and see how my throat was -- how it was going down my throat and everything.

Q All right. And that treatment ended in the summer –

A I believe so.

Q -- 2016?

A Yes.

ALJ: All right. Ms. Ivan?

BY THE ATTORNEY:

Q Mr. Dennison, you were doing speech therapy during that time, but were you able to speak during the time of March 4, 2016, to March 20, 2017, for more than about five hours a day?

A Oh, no. I tried not to do too much talking at all.

Q Okay. As a dispatcher, how much of your time did you spend speaking of your workday?

A Well, the telephone was the main forms of communication so at least five hours a day.

Q Could you have done that job during –

A No.

Q that time period?

A No way.

Q Why not?

A Because I couldn't be clear and precise to people. They couldn't understand me. It's very important in transportation, make sure people are going to the right places at the right times and know exactly what they're doing.

BY THE ADMINISTRATIVE LAW JUDGE:

Q So you want to tell me that after speech therapy was over, people could not understand your speech?

A If they lived with me. My wife could. And –

> Q Well, that's pretty much the basis of your claim and what your attorney is trying to tell me, that you could not be understood even though speech therapy was over and you had no more?
>
> A Okay. That's why OSU did, but I mean, you know, I'm still not -- I got partial plate. I don't have my bottoms. I have a very dry mouth often so that makes it hard to talk. I mean like right now my mouth's just -- everything's sticking inside my dentures, you know. That's part of what they took away from me when I had the cancer.
>
> Q And how long has your ability to talk today, how long has that been the case?
>
> A It gets a little better each day, sir. I'd say –
>
> Q All right
>
> A -- six months, five months.
>
> ALJ: Okay.
>
> ATTY: No further questions.

(R. at 40-42.)

> Plaintiff also submitted a hand-written statement, dated March 15, 2018, and set forth

here verbatim:

> To whom it may concern:
>
> On Feb. 26, 2016 I was diagnosed with tonsillar squamous cell carcinoma. A biopsy was performed, and also went for a nuclear P.E.T. exam. It showed a renal mass in my right kidney, and liesons on my lungs. In early March Dr. Rechardo Carrau M.D. with the James Cancer Hospt. at OSU – To began his plan to beat my cancer – with more test and procedure we discoved the kidney mass was layers of kidney stones, not cancer. and my lungs had scars tissue from previous bouts of pneumonia again not cancer.
>
> In mid July 2016 I was treated for pneumonia with antibioctic. Dr. Carrau set up treatment with radiation 35 of them pin pointing the open tumor on my right tonsil. (It was cancer) Before I could begin my treatments they decided to pull my 18 remaining teeth as they could not withstand the radiation and would fall out. It took them two weeks to pull them out, and it hurt very bad. So after my mouth healed somewhat.

> We began my treatment in late April 2016. To begin my radiation treatments, I was fitted with a very close and tight fitting face, neck, and shoulder's mask, which was secured to a table by bolts, I could not even move my eyelids. Wore this everytime (35 times) takeing radiation treatments. By mid May the radiation started makeing me very sick. I couldn't eat if I did didn't stay down. I was admitted to the James Hosp. on May 23, 2016 till June 1, 2016 they scoped my throat from top and bottom, fed me intravenously I came home June 1st with a P.E.G. tube in my belly. And for the next ten months, I took all medicines and nutrition by P.E.G. Tube 5 times a day the last two weeks of treatment was really really <u>BAD</u> my throat was on fire, my skin was rolling off my neck, when I would tried to drink water I would chocked. Talking was real painful and with the loss of my saliva glands and taste buds, this radiation treatment caused some permanent damage, I have dry mouth, difficult eating, very hard for people understanding my words when I am speaking. My false teeth not filling well, I do not eat well with or without my teeth, takes me a long time to eat anything. I still have difficulty swallowing.
>
> When I went into the hospital in March 2016 I weighted 165 lbs now weighing 131 lbs and still weak.
>
> Still today I have alot of bad days with aggravation, depression being around people. I just stay quiet a lot, can not go with my wife to social gatherings and events.

(R. at 266-268.)

### III. RELEVANT MEDICAL RECORDS

Ricardo L. Carrau, M.D., Plaintiff's treating physician, wrote a letter specifically cited by counsel in a pre-hearing brief asserting that Plaintiff's previous work as a dispatcher would be precluded by his speech limitations. (R. at 650, 274.). The letter, dated February 11, 2018, states, in relevant part:

> To Whom It May Concern:
>
> Mr. Donald Dennison has been under my care for treatment Right Tonsillar Squamous Cell Carcinoma from 03/08/2016 to present. During the time in question, March 2016 to March 2017, Mr. Dennison had undergone radiation treatment, speech/swallowing therapy and multiple esophageal dilations. It is highly unlikely, if at all possible, that the patient could have performed his duties as a telephone dispatcher effectively for a minimum of 5.3 hours/day.

(R. at 650.)

5

### IV. ADMINISTRATIVE DECISION

On September 10, 2018, the ALJ issued his decision. (R. at 12–29.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of March 4, 2016 through the end of the requested closed period. (R. at 17.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: tonsillar throat cancer in remission as of June 2016, a history of degenerative disc disease status/post remote fusion surgery in 1992, and peripheral artery disease status/post left leg femoral bypass procedures in 2009, 2011, and 2013. (R. at 17-18.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) At step four, the ALJ assessed Plaintiff's RFC as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the undersigned finds that, from March 4, 2016 through March 20, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant could frequently stoop, kneel, or climb ramps and stairs, but only occasionally crouch, crawl, or climb ladders, ropes, and scaffolds.

(R. at 19.) In reaching this determination, the ALJ accorded "the greatest weight" to the opinion of the state agency medical consultant, Lynne Torello, M.D. (R. at 23.) The ALJ generally agreed with and found that Plaintiff was capable of lifting or carrying up to ten pounds frequently; sitting, standing or walking for up to six hours out of an eight-hour workday with normal breaks, in addition to the other limitations reflected in the RFC. (*Id*.) The ALJ also accorded "great, but lesser weight" to the opinion of Leon D. Hughes, M.D.. (*Id*.) The ALJ found that Dr. Hughes opined only slightly lesser postural limitations than Dr. Torello but noted that Dr. Torello had had the opportunity to review more of the treatment evidence at the time of her assessment. (*Id*.) The ALJ assigned "little weight," however, to the letter from Plaintiff's treating physician Richard L. Carrau, M.D. dated February 11, 2018, finding that Dr. Carrau's opinion was inconsistent with the objective medical and treatment evidence (*Id*.)

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform his past relevant work as a phone dispatcher during the closed benefit period. (R. at 23-24.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 24.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

7

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the RFC is not supported by substantial evidence because the ALJ engaged in selective citation of the evidence in finding that Plaintiff had no restrictions in his ability to speak. According to Plaintiff, if it had been determined that he was unable to perform his previous job as a phone dispatcher, his age and education level would have resulted in a finding of disability under the Medical Vocational Guidelines. Construing Plaintiff's arguments somewhat generously, Plaintiff contends that the

ALJ erred in his "selective citation of the record" and in failing to properly consider the (1) hand-written statement he submitted in advance of his hearing, (2) his hearing testimony, and (3) the letter from his treating physician, Dr. Carrau.[2]  (ECF No. 11, at p. 16.)

**A.     ALJ's Evaluation of the Evidence**

   **1.   Dr. Carrau**

In evaluating a claimant's case, the ALJ must consider all medical opinions that he receives.  20 C.F.R. § 416.927(c).  Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  Here, Dr. Carrau is a treating physician.

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone ..." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.[2]  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[2] Plaintiff's argument relating to Dr. Carrau's letter particularly is not well-articulated in the Statement of Errors.  Instead, Plaintiff asserts that, in a pre-hearing brief, his counsel argued for "a disability finding based on a limitation to light work with additional limitations on the ability to speak." (ECF No. 11, at p. 16.)  The argument set forth in the pre-hearing brief relied on Dr. Carrau's letter.  Despite the poor articulation of this argument, the Commissioner's Memorandum in Opposition addressed the issue of Dr. Carrau's letter in great detail, exceeding at some length Plaintiff's own analysis of the issue.  (ECF No. 14, at pp. 4-8.)

9

evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no

10

requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In this case, the ALJ considered Dr. Carrau's letter, but assigned it "little weight," reasoning as follows:

> The undersigned has also considered, but given little weight to the letter of treating physician Richard L. Carrau, M.D., dated February 11, 2018, almost a year after the relevant period for the purposes of this decision (Ex. 7F). In his letter, Dr. Carrau writes that it was "highly unlikely, if at all possible, that the patient could have performed his duties as a telephone dispatcher effectively for a minimum of 5.3 hours/day" (Ex. 7F/l). Dr. Carrau does not provide any specific or medical basis for this speculative statement, and does not provide any specific functional limitations, only stating that the claimant had generally undergone radiation treatment, speech and swallow therapy, and had had multiple esophageal dilation procedures." As demonstrated by the review of the medical evidence above, the claimant did not receive any therapy for speech and voice, only therapy consisting of swallowing exercises. In addition, Dr. Carrau's own treatment records do not provide any objective support suggesting that the claimant would be unable to speak, talk, or sustain activity during this period, to the degree that would have precluded him from performing his past dispatcher work. Based on the objective medical and treatment evidence, which is inconsistent with this opinion, the undersigned has given Dr. Carrau's letter little weight.

(R. at 23.)

11

The Court of Appeals for the Sixth Circuit has held that a doctor's conclusion may be properly rejected when it is "inconsistent with the substantial evidence in the record indicating otherwise." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). Further, the Sixth Circuit also has held that it "generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record." *Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) (citations omitted).

Here, substantial evidence supports the ALJ's analysis of Dr. Carrau 's cursory opinion. Although the ALJ did not specifically mention the controlling weight analysis, such an error was harmless because "[the ALJ] has otherwise met the regulation's goal." *McCoy v. Comm'r of Soc. Sec.,* 356 F. Supp. 3d 704, 711 (S.D. Ohio 2018) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013)). For example, the ALJ noted that Dr. Carrau did not provide any specific or medical basis for his "speculative statement" that it was highly unlikely that Plaintiff could have performed his telephone dispatcher duties. (R. at 23.) In challenging the ALJ's decision, Plaintiff likewise fails to cite to any such evidence in the record. Rather, Plaintiff points only to multiple instances of his self-reporting of pain or saliva abnormality/dry mouth, and to the removal of his teeth. (ECF No. 11, at pp. 17-18.) This appears to be because, while the record contains evidence of speech and language therapy relating to Plaintiff's swallowing issue, it does not contain evidence of voice/speech therapy directed to his ability to speak. On the other hand, progress notes from a follow-up appointment related to Plaintiff's carotid artery disease on January 20, 2017, indicate that Plaintiff's speech was recorded as normal. (R. at 583.)

Further, the ALJ noted that Dr. Carrau's letter, in making the wholesale declaration that Plaintiff was unlikely to have been able to perform his past work, does not set forth function-by-

12

function limitations. The ALJ did not err when discounting this opinion because it failed to provide such assessments. *See* 20 C.F.R. § 404.1527(c); *Smith*, 2019 WL 764792, at *7 (finding that the ALJ reasonably determined that a treating physician's opinion was not well supported by record evidence where, *inter alia*, "the doctor did not provide a function-by-function analysis demonstrating the inability to perform any type of gainful activity"); *McCoy v. Comm'r of Soc. Sec.*, 356 F. Supp. 3d 704, 711 (S. D. Ohio Nov. 29, 2018) (concluding that the ALJ satisfied the requirement that he give "good reasons" before discounting the treating physician's opinion where, *inter alia*, the ALJ explained that the treating physician's opinion "lacked a function-by-function analysis and failed the supportability and consistency factors enumerated in 20 C.F.R. § 404.1527(c)"). Moreover, a treating physician's opinion on the ultimate issue of whether a claimant is disabled need not be given any weight because that determination of the ultimate issue is reserved for the Commissioner. *Scharmer v. Comm'r of Soc. Sec.*, No. 1:18-CV-00872, 2020 WL 1861869, at *6 (W.D. Mich. Apr. 14, 2020) (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 979, 980 n.1 (6th Cir. 2011)).

The ALJ also found that Dr. Carrau's opinion was unsupported by his own medical records. On this latter point, the ALJ noted that, as of August 2016, Dr. Carrau observed Plaintiff to be "feeling well with expected radiation effects;" that an endoscopy Dr. Carrau performed that month was "entirely normal with respect to the [Plaintiff's] physiologic vocal structures; and that, in October 2016 "the only residual noted" was Plaintiff's "continuing "moderate" difficulties swallowing." (R. at 22.) Accordingly, the ALJ reasonably concluded that Dr. Carrau's treatment notes did not document physical examination findings that would support his limitations concerning Plaintiff's physical abilities. Substantial evidence supports

13

this conclusion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see also Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 509 (6th Cir. 2012) (affirming ALJ's decision discounting treating physician's opinion because it was "not adequately explained or supported by [plaintiff's] treatment records.") (internal quotation marks omitted); *Driggs v. Astrue*, No. 2:11-cv-229, 2011 WL 5999036 at *6 (S.D. Ohio Nov. 29, 2011) (holding that "an ALJ may reject the opinion of a treating source where the treating physician's opinion is inconsistent with [that source's] own medical records.") (internal quotation mark and citation omitted). As discussed above, Plaintiff does not challenge the ALJ's analysis on these points in any meaningful way.

In sum, the ALJ utilized the correct legal criteria and substantial evidence supports his detailed reasons for discounting Dr. Carrau's opinions. *Stiltner v. Comm'r of Soc. Sec*., 244 F. App'x 685, 690 (6th Cir. 2007) ("The ALJ did not summarily dismiss Dr. Bansal's opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement."). Accordingly, Plaintiff's contention of error on this issue is without merit.

### 2. Plaintiff's Hand-Written Note and Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

> The claimant alleges that from March 4, 2016, through March 20, 2017, he was unable to sustain work due to his medical conditions. The claimant testified at on or about March 20, 2017, he returned to his work as a concrete finisher, which he had previously performed prior to becoming ill after being contacted by his employer earlier that same month. Upon questioning, the claimant was unclear as to when he felt medically able to return to work prior to that date. With respect to his conditions, the claimant testified that after completing radiation therapy for his throat cancer, he continued to participate in speech therapy, and nutrition therapy,

14

> including having a feeding tube at some point because of trouble swallowing and eating. The claimant testified that he was unable to speak for a period of time after his cancer treatment and subsequently described a period of being able to speak but people having a difficult time understanding what he was saying (Claimant Testimony).

(R. at 20.)

Although the ALJ did not specifically address Plaintiff's hand-written note, the ALJ addressed the issues it raised in addressing Plaintiff's hearing testimony. The ALJ determined that claimant's statements concerning the intensity, persistence and limiting effects of his symptoms was not entirely consistent with the medical and other evidence of record, explaining:

> The medical evidence, as reviewed above, does not support the claimant's testimony regarding his symptoms after he completed radiation therapy in June 2016, three months after his alleged disability onset date. For the remaining nine months of the relevant period, the claimant continued to have residual mild to moderate swallowing difficulties that were treated with speech therapy and an endoscopic dilation in January 2017, which further improved his symptoms. The record contains no evidence to support the claimant's assertion that he was unable to speak or be understood during this period. In addition, per the claimant's own treatment records, his pain and other residual radiation symptoms, including residual throat pain in the months following his radiation therapy, was managed with medication, and his weight maintained with supplemental nutrition administered through the PEG tube to ensure adequate nutrition and no further weight loss until his "mild" to "moderate" swallowing difficulties resolved.

(R. at 22.)

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's]

15

subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029 (March 2016)[2]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Court of Appeals for the Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial

16

evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Plaintiff does not assert that the ALJ failed to address or mischaracterized his testimony as to his limitations. As noted, Plaintiff's argument is that the ALJ simply disregarded this evidence in favor of other evidence. However, Plaintiff fails to cite any evidence supporting his assertion of specific speech difficulties. Rather, as previously noted, Plaintiff cites to multiple instances of his self-reports of pain, dry mouth and loss of teeth to support his claim of speech difficulties (*see* ECF No. 11, at pp. 17-18) and chastises the ALJ for his expectation of more specific statements regarding difficulties with respect to his ability to speak or abnormal examination results. (*Id*. at p. 17 "Yet the ALJ is preoccupied with a lack of specific statements regarding the ability to speak and abnormalities on exam of the vocal structures.")

In short, Plaintiff is merely arguing that the ALJ should have weighed the evidence differently. However, it is "[a]dministrative law judges [who] are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law[.]" 20 C.F.R. § 404.1513a(b); *see also Schmiedebusch*, 536 F. App'x at 649. To the extent that Plaintiff accuses the ALJ of "cherry picking" evidence, such an allegation "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); s*ee also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

For all these reasons, the Undersigned finds that the ALJ did not err in his consideration of the record evidence.

**B.     RFC**

Finally, Plaintiff contends that the ALJ's improper evaluation of the evidence was more than harmless error because it resulted in an inaccurate RFC. (ECF No. 11 at 19.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

18

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate his impairments cause functional limitations resulting in disability. 20 C.F.R. § 404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports the ALJ's conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

Here, Plaintiff argues that he has limitations on his ability to speak that were not included in the RFC. (ECF No. 11 at 16.) However, as set forth above, the ALJ specifically considered and found no support in the record for this limitation. (R. at 23.) For the reasons previously discussed, substantial evidence supports the ALJ's assessment and the Court must defer to it. *Longworth*, 402 F.3d at 595. While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his determination, which enjoys substantial support in the record. *Schmiedebusch*, 536 F. App'x at 649; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: November 2, 2020           s/ *Elizabeth A. Preston Deavers*
                                               ELIZABETH A. PRESTON DEAVERS
                                               CHIEF UNITED STATES MAGISTRATE JUDGE